16122

STATE v. STARNES *ET AL.*
(49 S. E. (2d) 209)

*Messrs. Harrison R. Swink,* of Gaffney, and *C. T. Gray-don,* of Columbia, for Appellant, James Starnes,

*Mr. J. Z. McKown,* of Gaffney, for Appellant, John De-Staffino,

*Mr. Samuel R. Watt, Solicitor,* of Spartanburg, for Respondent.

August 20, 1948.

TAYLOR, J.: This appeal arises out of the conviction of the two appellants, James Starnes and John P. DeStaffino, who were jointly indicted in the Court of General Sessions for Cherokee County and were tried in that Court on Thursday, March 20, 1947. The defendants were found guilty of manslaughter and a sentence of twenty years in the South Carolina Penitentiary or a like term on the public works of Cherokee County was imposed. Timely notice of intention to appeal was given by both defendants.

The appeal of the defendant DeStaffino will be first discussed. This appellant makes only two exceptions, the first of which is that the Trial Judge erred in failing to charge the Jury that the self-serving statements of the defendant James Starnes made to the officer were hearsay as to the defendant DeStaffino.

The second exception of the appellant DeStaffino charges error on the part of the Trial Judge in failing to charge the Jury on involuntary manslaughter, there being, as the exception states, testimony tending to show involuntary manslaughter.

As to the first exception, it appears in the record that ■ at the close of the charge to the Jury, the Judge inquired, "Anything further for the defendant DeStaffino?" to which Mr. Godshall, attorney for that defendant, replied, "Nothing further, your Honor." It has been repeatedly held that unless counsel for a party calls the attention of the Trial Judge to something which it is desired be charged, particularly where inquiry is made as quoted, there is no error on the part of the Trial Court in failing to charge. This exception is accordingly overruled.

With regard to the second exception of the defendant ■ DeStaffino, in our view it is extremely doubtful whether, under the facts in the case, there is any element of involuntary manslaughter such as to entitle that defendant to a charge thereupon. As a matter of fact, DeStaffino bottomed his denial of guilt on self-defense.

"Q. What were you doing shooting up in the air when the man was trying to take your life? A. I was shooting in self-defense, to get him to stop shooting at me; I was shooting to keep him from shooting me."

In the second place, this exception must be overruled for the same reason given as to the first; namely, the inquiry of the Trial Judge at the close of his charge as to whether anything further was desired for the defendant DeStaffino, and counsel's negative reply thereto.

All exceptions as to the defendant DeStaffino are accordingly overruled and the appeal dismissed.

The appeal as to the defendant Starnes, in all frankness, has occasioned this Court considerable difficulty. The Court

has accordingly very carefully and studiously examined the record and the authorities applicable, and it is thought well to reproduce briefly in narrative form the circumstances under which this homicide took place.

The scene was near the city of Gaffney at a cafe owned and operated by one Mrs. Grady Spencer, at which food and beer were sold. On the night of January 2, 1947, at about 1:30 A. M., one Floyd B. Coyle was there present along with the two defendants and several other individuals of both sexes when Coyle, who, it was testified, was an innocent bystander, was slain by a gunshot wound in the course of an altercation which arose on the premises. The testimony is somewhat in conflict as to what caused the exchange of shots; several witnesses testifying that the defendant De-Staffino was ordered out of the place, first by the proprietress, Mrs. Spencer, and second by Starnes, her employee. We insert here that Starnes made the establishment his home as well as working there. There is conflict of testimony as to who fired the fatal shot; some witnesses state the shot to have been fired by Starnes; other witnesses were unable to make a definite statement. There is testimony that De-Staffino resisted his ejectment by Starnes; on the other hand, there is testimony indicating that the attempt to eject was not directed primarily toward DeStaffino but toward the group as a whole, not because of disorderly or improper conduct, but because of the lateness of the hour and the desire of the proprietress to close for the night. There is testimony indicating Starnes warned Coyle, the deceased, not to advance on him, and that the affray had its beginning between these two; other testimony states Starnes' warning was addressed to DeStaffino.

The defendant Starnes did not take the stand in his own defense, and accordingly the sufficiency of the State's evidence must be the criterion of measurement for the purposes of this discussion.

The appellant Starnes files sixteen exceptions, the first eight of which relate to errors charged to the Trial Judge in refusing to direct a verdict of not guilty at the close of the evidence produced by the State.

The first exception imputes error in the refusal to direct a verdict of not guilty on the ground that the evidence clearly showed the defendant was in his own place of business and was attempting lawfully to eject a trespasser, and that in so attempting and in the protection of the premises, the deceased was killed. It is unquestioned that the defendant was in his own place of business and home, and there is some testimony indicating he was attempting to eject an invitee, and that in the course thereof the deceased was killed. However, under the particular facts in the instant case and the conflicting evidence above related, we are not prepared to hold as a matter of law that DeStaffino, once an invitee, thereafter became a trespasser so as to entitle Starnes to the immunities which surround the owner of a place of business on such occasions.

A very clear statement of the law is found in 26 American Jurisprudence, page 272, section 171, where we learn the following:

"When attacked in his own house, one may justify or excuse the killing of his assailant if such act is apparently necessary to save his own life or to protect himself from great bodily harm. If an intruder refuses to leave the dwelling house at the request of the householder, the latter may use the necessary force to eject him, and if in the effort to eject him, the life or safety of the householder or a member of the household is jeopardized, he may kill in self-defense. Even though a person has entered the dwelling at the invitation of the householder, his subsequent conduct may be such as to justify the householder in ordering his departure; and upon his refusal to depart, the householder is not required to yield as a mode of avoiding an altercation

and apprehended violence, but may use the force necessary or apparently necessary to eject him, and no more. The householder should not, in the first instance, resort to force to repel the intruder. The kind and degree of force which are justified depend on the conduct of the intruder."

According to the weight of authority (26 American Jurisprudence, page 264, section 257) a person has the same right to defend his place of business that he has to defend his dwelling. We also find in this connection a case from this Court, involving the charge of assault and battery with intent to kill, which expresses the same theory of the law. *State v. Rogers*, 130 S. C. 426, 126 S. E. 329.

This difficulty of the appellant Starnes in the instant case is in bringing himself within the law quoted in the light of the conflict of testimony as to the facts. There is some testimony from which the Jury might have reached the conclusion that Starnes and his co-defendant DeStaffino were venting a private grudge, which leaves for their determination the bona fides of Starnes' claim to be a justifiable homicide on either the grounds that he acted in defense of his place of business and dwelling house or that he fired in self-defense.

The discussion with regard to exception one applies with equal force to exceptions three, four, five, seven, and eight.

Exceptions two, four and six bear upon the claim of Starnes that he acted in self-defense. For the reasons that the testimony is in conflict as to what the circumstances actually were, and does not conclusively show facts, which as a matter of law, would justify the said defendant in his claim, we think the case as to these exceptions was properly submitted to the Jury, and they are likewise overruled.

Exception nine charges error to the Trial Judge in refusing to order a mistrial when "the attorney for the co-defendant, John P. DeStaffino, commented

upon and argued to the Jury, the fact that the defendant Starnes had not taken the stand," it being claimed that this refusal was error of law so as to entitle the appellant to a mistrial.

As to this exception, only the following appears in the record as to what took place:

"During the argument of Mr. Godshall, Mr. Swink, on behalf of James Starnes, moves the Court to order a mistrial on the ground that counsel is attempting to comment on the fact that James Starnes did not take the stand to contradict the testimony of his co-defendant, John P. DeStaffino. The State, says counsel for James Starnes, has no right to comment on it and counsel for co-defendant has no right to comment on it."

From this statement, this Court has no means of knowing with exactitude what counsel for DeStaffino had to say in his argument to the Jury in this connection and has therefore no means of determining whether or not counsel in fact transgressed the rule. We interpolate that if counsel went no further than to argue that Starnes had not contradicted the testimony of his co-defendant, there was no improper argument. In any event, it not appearing in the record just what the argument was, this exception must be overruled.

Exception ten of the appellant Starnes challenges the charge of the Trial Judge in the use of the following language:

"'That he had no other probably safe means of escape, that is, to avoid the danger, or apparent danger, to himself of losing his life or suffering serious bodily harm than to act as he did act in the particular instance. If by retreating one can avoid taking human life, without increasing his own danger, he must do it * * *'" it being claimed that error was committed in that under the undisputed evidence of the case, Starnes, being on his own premises, was not required

in any case by law to retreat, and that said charge was confusing, misleading, and prejudicial, and took from the defendant Starnes a material instruction which he was entitled to have charged.

The quoted language was used by his Honor in the course of a definition of the plea of self-defense and was one of several numbered charges so characterized by him, and we think, considered contextually, the charge was in no wise confusing or prejudicial. Later in his charge the Judge, in defining the status of the operator of a place of business, went fully into the rights of such operator, stating inter alia:

"* * * and if engaged in the exercise in good faith of his right to eject such trespasser, he would be in such a case without fault in bringing on the difficulty, and *he would not have to retreat.* * * * The law permits the occupant of the home to use such force even to the taking of human life, as may be reasonably necessary to accomplish the expulsion, and one, under such circumstances, does not have to retreat, and lawfully exercising his right to eject such trespasser he is without fault in bringing on the difficulty."

We think that the law of retreat was adequately stated, and that the defendant suffered no prejudice thereby, and this exception must be overruled.

Exception eleven imputes error to the Trial Judge in his charge of the following:

"If in the exercise of that force, after the proprietor has ordered the trespasser to leave, the proprietor is assaulted by the trespasser, and becomes subjected to such danger of losing his life or suffering serious bodily harm as would justify the killing of his assailant, under the law of self-defense, and if engaged in the exercise in good faith of his right to eject such trespasser, he would be in such a case without fault in bringing on the difficulty, and he would not have to retreat."

The error is claimed to be that under no condition would the defendant Starnes be required to retreat, he being on his own premises, and that neither would he have to be assaulted before he could act. As to this exception, we think that whether or not Starnes was acting in good faith in attempting to evict a trespasser would be determinative of his rights in the premises, and that if his acts were not in good faith, then he would not be without fault in bringing on the difficulty. The language used by the Trial Court was approved in *State v. Rogers, supra.* Obviously, if Starnes was not in good faith attempting to evict a trespasser, he would be at fault in bringing on the difficulty and would be under the compulsion of retreating. Exception overruled.

Error is charged in exception twelve to the Circuit Judge for his use of the following language in instructing the Jury:

"The law permits the occupant of the home to use such force, even to the taking of human life, as may be reasonably necessary to accomplish the expulsion, and one, under such circumstances, does not have to retreat, and lawfully exercising his right to eject such trespasser he is without fault in bringing on the difficulty."

Error is claimed in that the Trial Judge thereby limited the defendant in his right to stand his ground on his own premises to certain conditions and that under the law the defendant being on his own premises was not required to retreat. We think that the qualification confining the right of the occupant of a home or a place of business to use such force as may be reasonably necessary, and to the lawful exercise of his right to eject a trespasser is proper, and a correct statement of the law, and this exception is therefore overruled. *State v. Rogers, supra.*

Exception thirteen claims error in the charge in the use of the following language:

"When a person or persons commit an unlawful act; and the circumstances show that it was done unlawfully or maliciously the person or persons doing such act would be responsible for the natural and probable consequences of that act, if shown it was done maliciously or recklessly * * *" the error charged being that under no circumstances could the defendant be convicted of murder for the act recklessly done even though it be unlawful. We do not think that the use of the word "reckless" in this connection was prejudicial to the defendant in the light of the Court's ample and complete definition of murder in other parts of the charge, and this exception is accordingly overruled.

Exceptions fourteen and sixteen impute error to the Trial Judge in failing to charge the law of the home and defense thereof fully and completely, and in failing to charge the Jury completely as to the right of a person defending his own dwelling place. We again point out that at the close of his charge the Trial Judge inquired of counsel for both defendants whether or not they desired any further charge and that counsel for both defendants replied in the negative. As heretofore stated with reference to the appeal of the co-defendant in this case, this Court has repeatedly held that under such circumstances, if a party desires an amplification or more comprehensive charge on any particular matter, that he must, on the occasion of the Judge's inquiry thereabouts, make his wishes known, and he cannot delay complaining until the case reaches this Court. Exceptions fourteen and sixteen are accordingly overruled.

Exception fifteen complains the Trial Judge erred in failing to charge if on the whole case, including the plea of self-defense, there was a reasonable doubt as to the guilt of the defendant, he would be entitled to such reasonable doubt and to acquittal. The Trial Judge on two

occasions, once in connection with the plea of self-defense, and later generally, charged the law of reasonable doubt. In connection with self-defense, the charge read:

"I charge you further that if there exists in your mind a reasonable doubt, as I shall define the term reasonable doubt in a moment, as to whether or not he that relies on it had made out that plea, it would be your duty to solve that doubt in favor of the one relying on the plea, and write a verdict of 'Not Guilty'."

On reasonable doubt generally the charge was:

"These defendants when they come into court, come into this court presumed to be innocent, and that presumption of innocence remains with them throughout the entire trial of the case, and until you are convinced of their guilt beyond reasonable doubt. When we say that one comes into court presumed to be innocent we mean that is a substantial right that every defendant has who comes into court, and not a legal fiction. The State of South Carolina must prove the guilt of any defendant beyond reasonable doubt before any defendant can be convicted of any charge in this indictment. By reasonable doubt we do not mean any kind of doubt; but we mean a real doubt, a substantial doubt arising out of the evidence or lack of evidence in the case, and for which you can give a reason. The State of South Carolina must prove every material element of the offense charged, beyond reasonable doubt. If there exists in your minds such a doubt as to whether the State of South Carolina has proven the offense charged, resolve that doubt in favor of the defendant, or defendants, and write a verdict of 'Not Guilty.' "

We think the charge on reasonable doubt adequate. Exception overruled. Appeal dismissed.

BAKER, C.J., and FISHBURNE, STUKES, and OXNER, JJ., concur.